UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAROLYN PALMER,**<br><br>    Plaintiff,<br><br>        v.<br><br>**JANET NAPOLITANO,  Secretary, U.S. Department of Homeland Security,**<br><br>    Defendant. | Civil Action No.  11-2134 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Carolyn Palmer worked in information technology for BaseTech, a subcontractor for IBM, which, in turn, contracted with the Department of Homeland Security's Office of Customs and Border Patrol (CBP).  She was removed from a CBP project in 2009 after errors were discovered in her team's database-modernization work.  She then brought this *pro se* action against the Secretary of DHS, claiming her removal constituted unlawful discrimination on the basis of her race (black) and sex.  Defendant has now moved to dismiss the suit under Rule 12(b)(6) for failure to state a claim.  Holding that Plaintiff does not qualify as an employee of the federal government and thus cannot sue DHS for discrimination, the Court will grant Defendant's Motion.

**I.    Background**

According to her Complaint and its attachments, which the Court must presume true, Plaintiff was a systems administrator for BaseTech, a subcontractor to IBM.  See Compl., Attach. at ECF page no. 24 (Feb. 2, 2010, Memo), ECF page no. 23 (implementation plan).  IBM contracted with DHS's CBP to provide database support.  See Feb. 2, 2010, Memo.  Plaintiff was

1

assigned to the team working on this matter.  Compl. at ECF page no. 1.  She acknowledges that her job status at the time was as a contractor, not a government employee.  Id.  In December 2009, the project experienced difficulties after her team selected the wrong "luns" (logical unit number series) and critical information was lost from the database.  Id. at ECF page nos. 2-4.  On December 15, as a result, Plaintiff was removed from the project and placed on administrative leave.  Id. at ECF page nos. 5-6.  One of her co-workers, "Ken," was not.  He is a white male, and Plaintiff is a black female.  Id.  Plaintiff was not terminated by BaseTech, but rather placed on leave with pay for a week.  See Feb. 2, 2010, Memo.  Although she was removed from the CBP assignment, she was reassigned to another position on a contract with the United States Citizenship and Immigration Service.  Id.

Plaintiff alleges that she contacted the Equal Employment Opportunity Commission in December 2009 and indicated that she wished to file a discrimination complaint.  Compl. at ECF page no. 7.  She was informed that, as she was not a federal employee, she had to "file it with the Office of Civil Rights and Civil Liberties Union."  Id.  Yet, an email she attaches indicates that the EEOC in September 2010 actually informed her she could file a complaint with the relevant agency's internal EEO office.  Compl., Attach. at ECF page no. 29 (Sept. 13, 2010, email).  DHS had already assigned a counselor, who provided Plaintiff with the relevant forms.  Id., Attach. at ECF page no. 36 (May 19, 2010, email).  She ultimately did file a claim, which was denied, and on August 30, 2011, the EEOC issued an opinion denying Plaintiff's request for reconsideration.  Id., Attach. at ECF page nos. 42-45 (Denial).  The opinion noted that DHS had correctly determined that Plaintiff was a contractor, not an employee of DHS.  Id. at ECF page no. 45.

Plaintiff believes such a ruling is unfair and that discrimination rules should apply equally to government contractors and employees.  See Compl. at ECF page no. 9.   She filed her

suit in this Court on Nov. 30, 2011, in which she alleges discrimination by CBP "for removing me from a project based on my race, Black and gender, Female. I was a contractor at that time not a government employee." Id. at ECF page no. 1. Defendant has now moved to dismiss the case or, in the alternative, for summary judgment. As the Court determines that dismissal is appropriate, it need not reach the question of summary judgment.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in the plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). The notice pleading rules are "not meant to impose a great burden on a plaintiff." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the complaint, see Fed. R. Civ. P. 12(d), which includes statements adopted by reference as well as

copies of written instruments joined as exhibits. Fed. R. Civ. P. 10(c). Where the Court must consider "matters outside the pleadings" to reach its conclusion, a motion to dismiss "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see also Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).

**III.    Analysis**

In moving to dismiss the case, DHS argues that Plaintiff was the employee of an independent subcontractor (BaseTech), rather than a federal employee. As a result, the proper party she should sue is BaseTech, not DHS. See Mot. at 1. There is certainly no dispute that Plaintiff was merely an employee of BaseTech and not of CBP or DHS (or even principal contractor IBM). Indeed, Plaintiff unequivocally states in her Complaint, "I was a contractor at that time not a government employee," Compl. at ECF page no. 1, and repeats in her Opposition (styled "Plaintiff Respond to Defendant's Motion"), "Plaintiff stated at the beginning of the complaint process she was a contractor." Opp. at ECF page no. 4.

In a Title VII action against the federal government, the plaintiff must be "in a direct employment relationship with a government employer." Spirides v. Reinhardt, 613 F.2d 826, 829 (D.C. Cir. 1979) (footnote omitted). In other words, "[i]ndividuals who are independent contractors or those not directly employed by such an employer are unprotected." Id. (footnote omitted). "Status as an employee is therefore of crucial significance for those seeking to redress alleged discriminatory actions in federal employment." Id. at 829-30. Given that Plaintiff asserts that she was a contractor and does not claim to have been an employee in either law or fact, that is the end of the matter. Her desire that "courts can have the same rules in place to handle discrimination complain[t]s in the work place no matter if you are a contractor or

government employee," Compl. at ECF page no. 41, is a matter more appropriately taken up with the legislature than the courts.

Even if she had made the argument that the Court should treat her as an employee here, she would still not prevail. If she had so contended, the Court – using her own pleadings and incorporated documents – would then determine whether Plaintiff was an employee or independent contractor for purposes of Title VII. This, according to Spirides, involves

> analysis of the "economic realities" of the work relationship. This test calls for application of general principles of the law of agency to undisputed or established facts. Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative. Nevertheless, the extent of the employer's right to control the "means and manner" of the worker's performance is the most important factor to review here, as it is at common law and in the context of several other federal statutes. If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist.
> 
>   Additional matters of fact that an agency or reviewing court must consider include, among others, (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; [i].e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

Id. at 831-32 (internal footnotes omitted).

In Redd v. Summers, 232 F.3d 933 (D.C. Cir. 2000), the D.C. Circuit discussed the Spirides tests. The court in Redd first analyzed the question of control, id. at 938; having done

5

so, it moved on to the eleven factors, which it found "more useful to collect . . . in [four] groups." Id. at 939. These four are intent of the parties, "whether contracting out work is justifiable as a prudent business decision," the client's control over the work, and "whether the relationship shares attributes commonly found in arrangements with independent contractors or with employees." Id. at 939-40. This simplified method seems the better course here, too. [1]

In looking first at control, the Court notes that Plaintiff was not even employed by a company that contracted with the federal government. Instead, another layer separates her from DHS since she worked for BaseTech, which had a contract with IBM, which had a contract with CBP. See Feb. 2, 2010, Memo. In addition, CBP could not take action against a BaseTech employee; it could only "recommend" action, which had to go through IBM. See Compl. at ECF page nos. 5-6. Finally, Plaintiff's detailed description of what errors occurred during the project makes manifest that no CBP employee was overseeing the particulars of what the BaseTech team was doing. Id. at 2-4.

The contract between DHS and IBM also contains important language, which the Court may consider on a motion to dismiss because Plaintiff has incorporated it by reference into her Complaint. See Rand v. Sec'y of the Treasury, 816 F. Supp. 2d 70, 71 (D.D.C. 2011); see also, e.g., Feb. 2, 2010, Memo (referencing contract). The contract specified that IBM would hire the individuals and submit them to CBP for background investigations. See Mot., Decl. of Gwen Morris, Exh. 4 (contract provisions) at ECF page nos. 6-7. IBM, not CBP, would be the one that

---

[1] The Redd court also "suggested in dictum that [NLRB v. Browning-Ferris Indus. of Pa., Inc., 691 F.2d 1117 (3d Cir. 1982,] is better suited than Spirides to resolve 'joint employment' discrimination cases . . . ." Harris v. Atty. General of U.S., 657 F. Supp. 2d 1, 9-10 (D.D.C. 2009) (citing Redd, 232 F.3d at 937). Browning-Ferris addresses situations where the plaintiff may be an employee of two organizations at once. Id. at 1122-23. The test determines an individual's status by considering whether defendant "retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." Id. at 1123. As this test is quite similar to the first consideration of the Spirides test, the Court sees no reason not to apply Spirides, particularly where neither side asks the Court to refrain from doing so. See Harris, 657 F. Supp. at 10 (applying Spirides in same circumstance). In any event, the result under either Spirides or Browning-Ferris would be the same.

"directs, supervises or otherwise controls the actions of the Contractor's employees." Id., Exh. 5 (contract provisions) at ECF page no. 2. IBM, moreover, was authorized to arrange for subcontractors, like BaseTech. Id., Exh. 5 at ECF page no. 3. This evidence plainly demonstrates that DHS did not control BaseTech's employees.

The other factors do not undercut such an outcome. The intent of the parties, as manifested by the language in the contract, is for IBM to control its employees and subcontractors. There is nothing that would imply that such contracting is not a prudent business decision or that this relationship is not typical with independent contractors. On the contrary, the contract's "Introduction" states that "[t]his Contract is designed to provide a wide range of professional services to support the Agency-wide modernization of the core business processes and supporting information technology (IT) of the United States Customs Service." Id., Exh. 1 (contract provisions) at ECF page no. 2. In other words, it makes perfect sense for the CBP to hire a contractor with certain expertise to perform this one-time task, rather than hiring employees generally. Again, none of these points is disputed by Plaintiff.

Plaintiff also argues that because she was provided an opportunity to pursue her complaint through the EEOC process as a contractor, relief must be available. See Opp. at ECF page nos. 3-4. She thus seeks to penalize the Government for not summarily refusing Plaintiff redress and, instead, for affording her every opportunity for relief in the event she could prove her case. The Court declines such invitation. DHS maintained throughout that process that Plaintiff's status as a contractor would bar her recovery, as the EEOC ultimately found. There is no inconsistency in such a position.

Ultimately, although Plaintiff is understandably unhappy about what occurred, her beef lies with BaseTech, not CBP. She may file a suit against that company if such claim is not barred and if, in fact, she suffered an adverse employment action.

## IV.     Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting Defendant's Motion to Dismiss without prejudice.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 13, 2012